**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
|  | : |  |
| **GGNSC LANCASTER, et al.,** | : | CIVIL ACTION |
| Petitioners, | : |  |
|  | : |  |
| **v.** | : | No. 13-5291 |
|  | : |  |
| **GEORGE ELI ROBERTS,** | : |  |
| **By and through his attorney-in-fact** | : |  |
| **JOSEPH BUTLER,** | : |  |
| Respondent. |  |  |

**M E M O R A N D U M**

Stengel, J.                                                       March 31, 2014

This case involves a petition to compel arbitration between a nursing home and a nursing home resident, who is suing the nursing home in state court. The nursing home entities filed a petition to compel arbitration under the Federal Arbitration Act, citing an arbitration agreement. The nursing home resident then requested this court to either abstain from retaining jurisdiction over the case under the Colorado River doctrine or, in the alternative, dismiss the petition for failure to state a claim. For the reasons below, I will deny the respondent's motions to abstain and to dismiss.

**I.     BACKGROUND[1]**

The petitioners—related healthcare business entities—are citizens of Delaware and California.[2] Respondent George Eli Roberts is a resident of the Golden Living

---

[1] All facts stated are taken from the petition to compel arbitration, Doc. No. 1, unless otherwise noted.

[2] The petitioners are related through a somewhat elaborate corporate structure. Petitioner Drumm Corporation is a Delaware corporation with its principal place of business and nerve center in San Francisco, California. GGNSC

Center—Lancaster and is a citizen of Pennsylvania.[3] This motion to compel arbitration is related to a negligence action pending in Pennsylvania state court.

On April l, 2005, the respondent was admitted into Golden Living Center—Lancaster, a nursing home located in Lancaster, Lancaster County, Pennsylvania. Upon his admission, the respondent signed an Arbitration Agreement, which applied to all claims and disputes he might have with Golden Living.[4] The respondent presented with a number of physical ailments when he arrived; he continues to reside at Golden Living Center.[5]

---

Holdings, LLC is a Delaware limited liability company, with Drumm Corporation as its sole member. GGNSC Administrative Services, LLC is a Delaware limited liability company, with GGNSC Holdings, LLC as its sole member. Golden Gate National Senior Care, LLC is a Delaware limited liability company, with GGNSC Holdings as its sole member. GGNSC Equity Holdings, LLC is a Delaware limited liability company; its sole member is Golden Gate National Senior Care (GGNSC), LLC. GGNSC Lancaster GP, LLC is a Delaware limited liability company, with GGNSC Equity Holdings, Inc. as its sole member. GGNSC Clinical Services, LLC is a Delaware limited liability company with Golden Gate National Senior Care. GGNSC Lancaster LP, d/b/a Golden Living Center—Lancaster is a limited partnership between GGNSC Lancaster GP, LLC and GGNSC Lancaster LP. See Petition to Compel Arbitration, Doc. No. 1 at ¶¶ 1-8.

[3] Respondent's Attorney-in-Fact Joseph Butler is a citizen of Pennsylvania, residing at 320 S. Queen Street, Lancaster, Pennsylvania 17603.

[4] The Arbitration Agreement also provides in pertinent part:

It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement\1, and not by a lawsuit or resort to court process. This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment, or refund for services rendered to the Resident by the Facility, violations of any right granted to the Resident by law or by the Admission Agreement, breach of contract, fraud or misrepresentation, negligence, gross negligence, malpractice, or claims based on any departure from accepted medical or health care or safety standards, as well as any and all claims for equitable relief or claims based on contract, tort, statute, warranty, or any alleged breach, default, negligence, wantonness, fraud, misrepresentation, suppression of fact or inducement.

See Petition to Compel Arbitration, Doc. No 1, Ex. B.

[5] Respondent's Response in Opposition, Doc. No. 15 at 3.

On February 21, 2013, the respondent—through his attorney-in-fact—filed a Praecipe for Writ of Summons in the Lancaster County Court of Common Pleas naming Golden Living Center and its related entities (petitioners) as defendants.[6] On March 14, 2013, counsel for the petitioners notified the respondent's counsel that the case was inappropriately commenced in Lancaster County and requested that the respondent's counsel withdraw the case and go to arbitration. The respondent declined.

On July 11, 2013, the respondent filed a complaint in the state court action. On July 31, 2013, the petitioners filed Preliminary Objections to the complaint in Lancaster County, asserting—among other things—a motion to compel arbitration pursuant to the Arbitration Agreement. The respondent filed an Opposition to the Preliminary Objections on or about August 19, 2013. The petitioners then filed a Reply on August 23, 2013. To date, no oral argument has been set with regard to the Preliminary Objections and no ruling issued by the Lancaster County court.

Subsequently, Mr. Roberts served arbitration-related discovery on the nursing home. By agreement, answers to the discovery were due on September 19, 2013. On September 20, 2013, the Lancaster County judge entered an Order setting a hearing on discovery issues for October 4, 2013. On October 10, 2013, the Lancaster County court entered another Order narrowing the scope of arbitration-related discovery, following motion practice on the issue. The petitioners then answered narrowed discovery.

---

[6] Id. at 2.

On September 11, 2013, the petitioners filed their petition to compel arbitration in this court, pursuant to the Federal Arbitration Act (FAA). The respondent filed a motion to dismiss this petition on October 21, 2013.

## II.    JURISDICTION AND VENUE

### a.  Section 4 of the FAA

The threshold question in deciding a petition to compel arbitration is to determine whether this court has jurisdiction. Section 4 of the Federal Arbitration Act "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." Vaden v. Discover Bank, 129 S.Ct. 1262, 1271 (2009).[7] Therefore, the federal court only has jurisdiction over the petition to compel arbitration if the federal court could have jurisdiction over the underlying substantive dispute. Vaden, 129 S.Ct. at 1273. I am required to "look through" the petition to the underlying negligence action to see if it there is federal jurisdiction but for the arbitration agreement. Id. at 1266.[8] Because the negligence action contains state law claims only, there is no federal-question jurisdiction.

### b.  Diversity Jurisdiction

This court has jurisdiction under 28 U.S.C. § 1332 if the parties are diverse and the amount in controversy exceeds $75,000. The pleadings indicate the parties are

---

[7] See also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n. 32 (1983)("Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue.").

[8] See also Manze v. State Farm Ins. Co., 817 F.2d 1062, 1067-69 (1987)(explaining how to handle a petition for motion to compel arbitration by looking through to the plaintiff's state court complaint for the amount in controversy).

diverse with the respondent being a citizen of Pennsylvania and the petitioners being citizens of Delaware and California.

"[T]he amount in controversy in a petition to compel arbitration…is determined by the underlying cause of action that would be arbitrated." <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 877 (3d Cir. 1995). The respondent's request for damages is "in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand $50,000" in his state court complaint.[9] In their petition to compel arbitration in this court, the petitioners contend that the respondent's state court action "may be fairly read to indicate that the matter in controversy in that matter exceeds $75,000.000" in order to allow diversity jurisdiction.[10]

Under this scenario, courts have found that the "legal certainty standard" applies to the amount asserted in the petition to compel arbitration.[11] From the face of the pleadings, "[i]t must appear to a legal certainty that the claim is really for less than the

---

[9] Petition to Compel Arbitration, Doc. No. 1, Ex. A at 23, 25, 27. I recognize that the respondent's request for an award in excess of $50,000, and not a number in excess of $75,000, was most likely intended to signal to the state court that the case was not appropriate for compulsory arbitration under 42 Pa.C.S.A. § 7361. However, in order to be thorough and ensure that jurisdiction in this court is proper, I will explain why the amount in controversy requirement is met.

[10] Petition to Compel Arbitration, Doc. No. 1 at ¶ 13.

[11] <u>See</u> <u>Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka</u>, 599 F.3d 1102, 1108 (9th Cir. 2010)("The amount in controversy alleged by the proponent of federal jurisdiction…controls so long as the claim is made in good faith."); <u>Doctor's Assocs., Inc. v. Hamilton</u>, 150 F.3d 157, 160-61 (2d Cir. 1998); <u>Woodmen of the World Life Ins. Soc'y v.Manganaro</u>, 342 F.3d 1213, 1217 (10th Cir. 2003).

This question has not directly been addressed by the Third Circuit; however, the Third Circuit in <u>Jumara</u> indicated that the amount in controversy in a petition to compel was determined by the underlying action, consistent with the legal certainty standard. <u>See</u> <u>Jumara</u>, 55 F.3d at 877.

jurisdictional amount to justify dismissal." <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938).[12]

The plaintiff's state court complaint alleges damages for negligence by the defendants in failing to treat several skin ailments of the plaintiff. The medical expenses related to treating these ailments, but for the negligence of the defendants, are not alleged but could be over $75,000. Furthermore, the amount in controversy could exceed $75,000 given that the plaintiff is also seeking punitive damages.[13]

From what has been provided, there is nothing to show with legal certainty that the award in this case will not be in excess of $75,000. The amount in controversy pled by the petitioners is adequate. Therefore, this court has federal diversity jurisdiction over this petition under 28 U.S.C. § 1332.

Venue is appropriate in this district because a substantial part of the events or omissions giving rise to the respondent's state court claim occurred in this district. <u>See</u>

---

[12] "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 289.

[13] The punitive damages should be considered in calculating the amount in controversy for purposes of determining jurisdiction. <u>See</u> <u>Frederico v. Home Depot</u>, 507 F.3d 188, 199 (3d Cir. 2007)(citing <u>Golden ex rel. Golden v. Golden</u>, 382 F.3d 348, 356 (3d Cir. 2004)).

Punitive damages may be to calculate the amount in controversy so long as Pennsylvania state law allows them for the asserted causes of action and they are not otherwise "patently frivolous and without foundation." <u>Golden v. Golden</u>, 382 F.3d at 356. "Pennsylvania law permits the recovery of punitive damages for 'torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured.'" <u>Id.</u> I also find nothing in the plaintiff's state court complaint which would render the punitive damage request "patently frivolous."

28 U.S.C. § 1391. The respondent alleges the underlying negligent acts took place at the Golden Living Center in Lancaster, Pennsylvania, where he is a resident.[14]

## III.   DISCUSSION

The respondent requests that this court dismiss the pending petition under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). The respondent also argues that the petition should be dismissed under Rule 12(b)(6) for failure to state a claim. I will address each point in turn.

### a.   Abstention under Colorado River

The Colorado River doctrine allows a federal court to abstain from exercising jurisdiction—either by staying or dismissing a pending federal action—when a parallel ongoing proceeding is pending in state court. Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009)(citing Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976)). The primary goal of this doctrine is to prevent duplicative litigation. Colorado River, 424 U.S. at 817. This doctrine is only to be applied in "exceptional circumstances" because "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Id. at 813. Whether abstention under Colorado River is appropriate requires a two-part inquiry: 1) first, the court must determine whether the state and federal court proceedings are, in fact, "parallel;" and 2) if they are parallel, a court must then weigh several factors to decide if the "exceptional circumstances" warranting abstention are present. Nationwide Mut. Fire Ins. Co., 571 F.3d at 307-08.

---

[14] See Petition to Compel Arbitration, Doc. No. 1, Ex. A.

### i. Parallel Proceedings

Proceedings are "parallel" if they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues." Yang v. Tsui, 416 F.3d 199, 204 n. 5 (3d Cir. 2005)(citation and quotation marks omitted).  In cases such as this where a party files a motion to compel arbitration in federal court, after the opposing party has filed suit in state court, the proceedings are not necessarily "parallel."[15] Though they may appear similar, these actions are not necessarily duplicative unless they involve the same parties, same legal and factual issues, and seek the same remedies.[16] See Allied Nut and Bolt, Inc. v. NSS Industries, Inc., 920 F.Supp. 626, 630-31 (E.D. Pa. 1996)(Pollak, J.).

---

[15] See Perry v. Manor Care, Inc., Civil Action No. 05-5767, 2006 WL 1997480, at *6 (E.D.Pa. Jul. 14, 2006)(in an analogous case of a nursing home resident asserting negligence claims in state court, district court found motion to compel in federal court not parallel); Harris v. Pernsley, 755 F.2d 338, 346 (3d Cir. 1985)(finding that proceedings weren't parallel because the sought after relief in each case differed). Compare with Flint v. A.P. Desanno & Sons, 234 F.Supp.2d 506, 511 (E.D.Pa. 2002)(finding actions to be parallel, but not involving arbitration request).

[16] The definition of "parallel" is one that has not been well-developed in case law because courts do not always address this part of the Colorado River inquiry. See Nationwide Mut. Fire Ins. Co., 571 F.3d at 308 ("We need not take up the parallel action analysis here because, even presuming parallelism, this action does not present the type of circumstances warranting abstention."); Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz, No. 1:13–CV–02449, 2013 WL 6185604, at *2 (M.D.Pa. Nov. 25, 2013)(declining to determine if proceedings were parallel because Colorado River abstention factors not present); Insurance Newsnet.com, Inc. v. Pardine, No. 1:11–CV–00286, 2011 WL 2461960, at *2 (M.D. Pa. Jun. 17, 2011)("Because the Court finds that abstention is not warranted upon a consideration of the six factors, it need not resolve whether these proceedings are parallel for purposes of the Colorado River doctrine."); Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas, 309 F.Supp.2d 652, 656-57 (M.D.Pa. 2004)(assuming state court proceedings were parallel in a dispute over arbitrability).

The Supreme Court in Moses H. Cone itself also did not tackle the question of whether the proceedings in that case were actually parallel; instead, it simply deferred to the district court's finding that they were because the underlying issue in both actions was the arbitrability of the claims between the parties. See Moses H. Cone, 460 U.S. at 7 ("On the Hospital's motion, the District Court stayed Mercury's federal-court suit pending resolution of the state-court suit because the two suits involved the identical issue of the arbitrability of Mercury's claims.") and 10 ("That issue of arbitrability was the only substantive issue present in the federal suit.").

I address this prong because the Third Circuit has indicated that the determination of whether proceedings are parallel should first be considered before turning to the Colorado River factors. Nationwide Mut. Fire Ins. Co., 571 F.3d at 307-08 ("Whether abstention is appropriate is a two-part inquiry. The initial question is whether there is a parallel state proceeding that raises 'substantially identical claims [and] nearly identical allegations and issues.' If

The parties in the state court action and this federal action are the same. The two actions share the same legal issue of whether arbitration is appropriate; this issue is at the heart of the federal action and has been raised as an objection in the state court action. The remedies being sought by the parties, however, are not the same. In this action, petitioners seek to compel arbitration; in the state court action, the respondent/plaintiff seeks monetary damages for the alleged torts. This difference alone is enough to show that the proceedings are not parallel under Third Circuit case law.[17] See Allied Nut and Bolt, Inc. v. NSS Industries, Inc., 920 F.Supp. 626, 630-31 (E.D. Pa. 1996)(Pollak, J.); Perry v. Manor Care, Inc., Civil Action No. 05-5767, 2006 WL 1997480, at *6 (E.D.Pa. Jul. 14, 2006)(in an analogous case of a nursing home resident asserting negligence claims in state court, district court found motion to compel in federal court not parallel); Harris v. Pernsley, 755 F.2d 338, 346 (3d Cir. 1985)(finding that proceedings weren't parallel because the sought after relief in each case differed).

### ii.  Factors Warranting Abstention Under Colorado River

Even if the proceedings could be considered parallel, the "exceptional circumstances" required to invoke the Colorado River doctrine are not present here.

---

the proceedings are parallel, courts then look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present.")(citations and quotation marks omitted).

[17] The respondent argues that the proceedings are parallel simply because the petitioners titled them as such in correspondence to the state court judge. Respondent's Motion to Dismiss, Doc. No. 14, Attach. 1 at 4 n. 8. They, however, do not provide an analysis of whether the proceedings are parallel under the definition provided in precedent. There is nothing I can find to support the assertion that the petitioners' potential agreement that the actions are parallel would be enough to make them such. Therefore, I cannot rely on this argument or set of facts to make this determination.

In determining whether an action requires abstention under Colorado River, courts should consider: "(1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." Nationwide Mut. Fire Ins., 571 F.3d at 308 (citing Spring City Corp. v. Am. Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999)). Application of the factors requires "a flexible, pragmatic" approach such that no one factor is determinative. Moses H. Cone, 460 U.S. at 22; see also Colorado River, 424 U.S. at 818–19. The balancing of factors should be "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16.

### 1.  Risk of Piecemeal Litigation

Neither the first or second factor applies in this case since no property is at issue and the federal forum is no more or less convenient to the parties.[18] As for the third, there is no risk of piecemeal litigation because the parties are the same in both actions and all parties participating in the state and federal suits are parties to the arbitration agreement. The respondent argues that there is a risk of inconsistent results if both actions are permitted to go forward. The petitioners request that this court stay the pending state court action if the motion to compel arbitration is granted. Since this court

---

[18] Both parties agreed that these factors are inapplicable. See Respondent's Motion to Dismiss, Doc. No. 14, Attach. 1 at 5; Petitioners' Response in Opposition, Doc. No. 15, Attach. 1 at 8.

could stay the state court action, there would be little risk of inconsistent results.[19] See

Manor Care of Camp Hill, PA, 2013 WL 6185604, at *4.

## 2.  Order and Priority of the Actions

The fourth factor weighs slightly in favor of abstention. The Supreme Court

explained that "priority should not be measured exclusively by which complaint was

filed first, but rather in terms of how much progress has been made in the two actions."

Moses H. Cone, 460 U.S. at 21. The state court case was initiated with a Writ of

Summons in February 2013. This petition to compel arbitration was not filed in this

court until September 11, 2013. By that time, the petitioners had already filed

preliminary objections to respondent's state court complaint, raising the issue of

arbitration with the court at that time. The parties had also briefed the issue, including a

supplemental brief from the petitioners; the arguments offered in those state court

pleadings are essentially the same as what is being presented here. The petitioners had

already participated in and been ordered to produce arbitration related discovery.

The respondent also argues that the petitioners did not file this petition until

shortly before the state court required their production of documents related to the

---

[19] Pursuant to the Anti–Injunction Act, federal courts may not issue injunctions to stay state court proceedings. 28 U.S.C. § 2283. However, three circumstances operate as exceptions to the Anti–Injunction Act: 1) when an injunction is expressly authorized by Congress; 2) when an injunction is necessary in aid of the court's jurisdiction; or 3) when an injunction is necessary to protect or effectuate the court's judgments. Id.

"The FAA itself does not address expressly authorize the federal courts to enjoin state court proceedings" to allow for exception one. Insurance Newsnet.com, Inc. v. Pardine, No. 1:11–CV–00286, 2011 WL 3423081, at *4 (M.D.Pa. Aug. 4, 2011). Courts have instead found that an injunction of pending arbitration falls under the second exception to the Anti–Injunction Act because it is necessary to aid of the court's exercise of jurisdiction over the petition to compel arbitration. See, e.g., Insurance Newsnet.com, Inc., 2011 WL 3423081 at *4; Morgan Stanley Dean Witter Reynolds, Inc. v. Enterman, No. 03–2247, 2003 WL 22020065, at *3 (E.D.Pa. July 3, 2003); Cent. Reserve Life Ins. Co. v. Marelllo, No. 00–3344, 2001 WL 41129, at *2 (E.D.Pa. Jan.17, 2001);

agreement. The respondent frames this timing as a "blatant attempt to forum and judge shop," a strategy which <u>Moses H. Cone</u> cautioned courts to consider in its abstention analysis.[20] While I agree the timing of their filing does raise a specter of impermissible forum shopping, the gap of time between the filing of the state court complaint and this petition was not so lengthy as to warrant abstention on this basis alone.[21] See <u>Morgan Stanley</u>, 309 F.Supp.2d at 658-59 (explaining how petitioner's delay in filing in federal court of one year and a half after respondent notified of intent to sue weighed heavily in favor of abstention); <u>but see</u> <u>Manor Care of Camp Hill, PA, LLC v. Fleagle ex rel. Fritz</u>, No. 1:13–CV–02449, 2013 WL 6185604, at *5 (M.D.Pa. Nov. 25, 2013)(in looking at the fourth factor the court found that a six month gap between state court filing and petition filing was not enough of a delay to find more progress in state court action).

### 3. Application of State or Federal Law

The fifth factor is neutral because both state and federal law would apply. In order to address the petition, the court would need to first determine whether the arbitration agreement is a valid contract between the parties.[22] Pennsylvania contract law

---

[20] <u>See</u> <u>Moses H. Cone</u>, 460 U.S. 1, 17 n. 20 (1983);  <u>see also</u> <u>Morgan Stanley,</u> 309 F.Supp.2d at 658-59.

[21] While it is true that the state court in this action was already considering the issue of arbitration as in <u>Morgan Stanley</u>, the court has not held oral arguments on nor ruled on the issue as of the date of the respondent's motion. <u>See</u> Petitioner's Response in Opposition to the Motion to Dismiss, Doc. No. 15 at 11. Though the state court has progressed farther on the issue of arbitrability than this court, this would not be enough to warrant abstention.

In addition, "there is no doctrine of abstention or deference that authorizes a federal court to decline to exercise jurisdiction on the ground of forum shopping alone." <u>Southeastern Pa. Trans. Auth. v. Pa. Pub. Utility Com'n</u>, 826 F.Supp. 1506, 1516 n. 8 (E.D.Pa. 1993)(Pollak, J.)(quoting 17A Charles A. Wright and Arthur R. Miller, <u>Federal Practice & Procedure</u>, § 4247, at 9 (Supp.1992))(quotation marks omitted).

[22] <u>See</u> <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification we discuss below) should apply ordinary state-law principles that govern the formation of contracts."); <u>Alexander v. Anthony</u>

then would first be considered. If the agreement is invalidated, Pennsylvania law would apply because the claims are ones based in negligence. If the agreement is found to be valid, the FAA would be used to interpret the agreement and fill any gaps that may exist in the agreement.[23] See Khan v. Dell, 669 F.3d 350, 353-53 (3d Cir. 2012)(explaining how the FAA offers guidance in determining how to interpret arbitration contract provisions when arbitrator is no longer available); Moses H. Cone, 460 U.S at 24-25 (explaining how the FAA helps determine that "the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability").

### 4.  Protection of Parties' Interests by State Court

Finally, the sixth factor weighs towards abstention because there is no indication that the state court will not adequately protect the interests of the parties. The state court has, thus far, permitted arbitration discovery in order to explore the petitioner's

---

Intern., L.P., 341 F.3d 256, 264 (3d Cir. 2003)(explaining that the relevant state law of contracts would determine when an agreement to arbitrate may be enforced).

[23] The petitioners argue that the FAA itself serves as substantive federal law in interpreting the enforceability of arbitration agreements, citing to Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630 (2009). This argument misconstrues the Court's interpretation of § 3 of the FAA. While Andersen did say that § 3 "creates substantive federal law regarding the enforceability of arbitration agreements," the Court went on to say that neither §2 nor § 3 "purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." Arthur Andersen, 556 U.S. at 630. "'[S]tate law,' therefore, is applicable to determine which contracts are binding under § 2 and enforceable under § 3 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" Id. at 630-31 (quoting Perry v. Thomas, 482 U.S. 483, 493 n. 9 (1987))(citing First Options of Chicago, 514 U.S. at 944).

objection to the suit. However, no ruling by the court has indicated it will not uphold the strong policy to favor arbitration. [24]

Overall, the factors weigh against abstention. Since abstention under <u>Colorado River</u> is only permitted in very narrow circumstances, I am obliged to retain jurisdiction over the petition to compel arbitration.[25]

**b. Rule 12(b)(6)**

**i. Standard of Review for Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint.[26] <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The factual allegations must be sufficient to make the claim for relief more than just speculative.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  <u>Id.</u>; <u>see also</u> <u>D.P. Enters. v. Bucks County Cmty. Coll.</u>, 725 F.2d 943, 944 (3d Cir. 1984).

---

[24] Section 2 of the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" as set forth by Congress. <u>Moses H. Cone</u>, 460 U.S. at 24.

[25] <u>See</u> <u>Moses H. Cone</u>, 460 U.S. at 25-26 ("[T]he task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under <u>Colorado River</u> to justify the surrender of that jurisdiction.").

[26] In deciding a motion to dismiss, the court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. <u>See</u> <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). The court may also consider "undisputedly authentic" documents when the claims are based on the documents attached to the motion to dismiss. <u>Id.</u>

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Brown v. Card Service Center, 464 F.3d 450, 456 (3d Cir. 2006)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### ii. Enforceability of GGNSC Arbitration Agreement

The respondent argues that the petition to compel arbitration should be dismissed because the underlying arbitration agreement has been found to be invalid under Pennsylvania law. Because the GGNSC arbitration agreement includes provisions implicating the National Arbitration Forum (NAF)—an arbitrator and forum that is no longer available—the respondent argues that this court should find Stewart v. GGNSC-

15

Canonsburg, L.P., 9 A.3d 215 (Pa. Super. 2010), reh'g denied (Jan. 13, 2011), to be controlling. The petitioners argue that the Third Circuit's more recent decision in Khan v. Dell, 669 F.3d 350 (3d Cir. 2012), instead controls.

Both Stewart and Khan interpreted arbitration provisions which selected the NAF as the arbitration forum after it had become unavailable.[27] Both cases addressed when the appointment of a substitute arbitrator under § 5 of the FAA is appropriate, if the chosen arbitrator of the parties becomes unavailable.[28] Both courts followed the interpretation of § 5 that "an arbitration agreement will not fail because of the unavailability of a chosen arbitrator unless the parties' choice of forum is an 'integral part' of the agreement to arbitrate, rather than 'an ancillary logistical concern.'"[29] In interpreting the agreements before them, however, Stewart and Khan came to different conclusions about whether the choice of forum was integral and § 5 applied.

### a.  Stewart v. GGNSC-Canonsburg, L.P.

---

[27] Stewart, 9 A.3d at 217-18; Khan, 669 F.3d at 353-55.

[28] Section 5 of the FAA states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (1947).

[29] Stewart, 9 A.3d at 218-19 (citing Reddam v. KPMG L.L.P., 457 F.3d 1054, 1061 (9th Cir.2006); Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1222 (11th Cir.2000)). Compare with Khan, 669 F.3d at 354 ("In determining the applicability of Section 5 of the FAA when an arbitrator is unavailable, courts have focused on whether the designation of the arbitrator was 'integral' to the arbitration provision or was merely an ancillary consideration.")(citing Reddam, 457 F.3d at 1061; Brown, 211 F.3d at 1222).

As a matter of first impression, the Pennsylvania Superior Court in <u>Stewart</u> found that an arbitration agreement between GGNSC and a nursing home patient was not enforceable because the designated arbitration forum, the NAF, was no longer available.[30] <u>Stewart</u>, 9 A.3d at 222. In reaching its decision, the Superior Court found that the use of the NAF as an arbitration forum was an integral part of the GGNSC agreement. <u>Id</u>. at 221.

The Superior Court reviewed the trial court's decision to deny preliminary objections on the basis that the arbitration agreement was unenforceable. The court found that substantial evidence supported the court's findings and that the trial court did not abuse its direction in denying the petition to compel arbitration.[31] <u>Stewart</u>, 9 A.3d at 218.

<u>Stewart</u> acknowledged that state and federal courts were split on whether the use of the NAF was integral to an arbitration agreement. <u>Stewart</u> 9 A.3d at 219. The court rejected the cases aligned with <u>Jones v. GGNSC Pierre LLC</u>, 684 F.Supp.2d 1161 (D.S.D. 2010), which found that the NAF and NAF Code was not integral to the GGNSC agreement. These cases included <u>Adler v. Dell</u>, 2009 WL 4580739, at *3

---

[30] The NAF was no longer permitted to accept arbitration cases pursuant to a consent decree it enter with the Attorney General of Minnesota. <u>See</u> <u>Stewart</u>, 9 A.3d at 217; <u>Khan</u> v. Dell, 669 F.3d 350, 352-53; Respondent's Motion to Dismiss, Doc. No. 14, Ex. K & L (a copy of the consent judgment and Congressional findings on the subject).

[31] In making its decision, the Superior Court relied on the district court opinion from <u>Khan v. Dell, Inc.</u>, 2010 WL 3283529, at *4 (D.N.J.2010)("The plain language of this clause evinces the parties' intent to arbitrate exclusively before a particular arbitrator, not simply an intent to arbitrate generally. The NAF is expressly named, the NAF's rules are to apply, and no provision is made for an alternate arbitrator. The language used is mandatory, not permissive."). <u>Stewart</u>, 9 A.3d 219.

(E.D.Mich.2009), and <u>Brown v. ITT Consumer Fin. Corp.</u>, 211 F.3d 1217, 1222 (11th Cir.2000). <u>Stewart</u>, 9 A.3d at 219-20.

In <u>Stewart</u>, the nursing home parties argued that the court could have appointed another arbitrator under § 5 of the FAA. <u>Stewart</u>, 9 A.3d at 218. <u>Stewart</u> rejected this argument because it had found the choice of the NAF to be integral; the court explained that it would not rewrite the terms of the arbitration provision in this case because "[s]anctioning this type of action would run contrary to the clear intent of the parties as expressed by the plain language of the Agreement itself." <u>Stewart</u>, 9 A.3d at 221.

### b. **Khan v. Dell**

In <u>Khan v. Dell</u>, the Third Circuit determined that § 5 of the FAA required the appointment of a substitute arbitrator when the arbitrator designated by the parties was unavailable and the intent of the parties to use only the chosen arbitrator was ambiguous. <u>Khan v. Dell</u>, 669 F.3d 350, 356 (3d Cir. 2012). As a matter of first impression for the Third Circuit, <u>Khan</u> endorsed the view that a court will decline to appoint a substitute arbitrator under the FAA only if the parties' choice of forum is "so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end." <u>Khan</u>, 669 F.3d at 354 (quoting <u>Reddam v. KPMG LLP</u>, 457 F.3d 1054, 1061 (9th Cir.2006)). The court interpreted this to mean that "the parties must have unambiguously expressed their intent not to arbitrate their disputes in the event that the designated arbitral forum is unavailable." <u>Khan</u>, 669 F.3d at 354.

In a contract between Khan and Dell, the arbitration provision stated that all disputes were to be exclusively resolved by arbitration administered by the National

Arbitration Forum. <u>Id.</u> at 355. Like the contract in this case, NAF rules were incorporated into the agreement and provided that "all arbitrations must be conducted by the NAF or an entity having an agreement with it." <u>Id.</u> The contract also included a severability clause and stated that it was to be read consistent with the FAA. <u>Id.</u>

Reading all of these clauses together, the court found that it was ambiguous whether the parties intended not to arbitrate their disputes in in the absence of the NAF as the designated forum. <u>Id.</u> at 356. The Third Circuit rejected the position taken by <u>Carideo v. Dell, Inc.</u>, No. C06– 1772JLR, 2009 WL 3485933, at *3 (W.D.Wash. Oct. 26, 2009), that a court *may* appoint a substitute arbitrator by looking to the language of FAA § 5, which states that the court *shall* appoint an arbitrator at the application of either party.[32] <u>Id.</u> at 355-56.

The Third Circuit too recognized the court split noted in <u>Stewart</u> but found that the "liberal policy in favor of arbitration" counseled it to side with the <u>Brown/Jones</u> line of cases. <u>Id.</u> at 356. Finding that the language in the Dell agreement was at best ambiguous, the court found this policy required it to be resolved in favor of arbitration.[33] <u>Id.</u>

---

[32] The Pennsylvania Superior Court had cited positively to both the district court's decision in <u>Khan</u>—which the Third Circuit vacated and remanded—and <u>Carideo</u>, which the Third Circuit rejected. <u>See</u> <u>Stewart</u>, 9 A.3d at 221.

[33] The Third Circuit did not address Khan's alternative argument that the arbitration provision was unconscionable because the district court had not done so. The district court was instructed to address this point on remand. <u>Id.</u> at 357 n. 3.

I find no legal basis that would require the petition to compel arbitration to be dismissed at this stage.[34] This court is bound to follow Khan, which instructs that the absence of NAF does not necessarily render an arbitration provision unenforceable.[35] The petitioners have provided enough to overcome a motion to dismiss their petition; the petitioners pled sufficient facts to show plausibly that the parties entered into an arbitration agreement covering all disputes between them that, on its face, is not patently invalid. For these reasons, dismissal of the petition would not be appropriate at this stage.[36]

## IV.    CONCLUSION

---

[34] It is also worth noting that there is nothing in the pleadings to show that the agreement signed by the respondent includes the same wording as the contract at issue in Stewart or that the NAF Code incorporated into the respondent's agreement is the same as that which was incorporated in Stewart.

[35] The Third Circuit did not address Stewart in Khan. Some courts have read Stewart and Khan to be consistent in that they both stand for the principle that § 5 is not invoked if the forum selection clauses are integral to the agreement. See Riley v. Extendicare Health Facilities, Inc., 345 Wis.2d 804, 816-17 (C.A. Wis. 2012); Miller v. GGNSC Atlanta, LLC, 323 Ga.App. 114, 119 n.10 (C.A.Ga. 2013)(finding the GGNSC's inclusion of NAF rendered the provision unenforceable). Others have read them to be distinguishable. See GGNSC Montgomery, LLC v. Norris, No. 2:12cv711–CSC, 2013 WL 627114, at *3 (M.D.Ala. 2013)(finding the inclusion of the NAF in the GGNSC arbitration agreement is not integral); Meskill v. GGNSC Stillwater Greeley LLC, 862 F.Supp.2d 966, 973-74 (D.Minn. 2012)(finding the GGNSC arbitration clause's inclusion of NAF was not integral and therefore required a substitute arbitrator appointed under FAA §5); Licata v. GGNSC Malden Dexter LLC, 29 Mass.L.Rptr. 467, at *8 (Mass. Super. Ct. 2012)(finding GGNSC arbitration provision inclusion of NAF to be integral and therefore unenforceable).

Whether Stewart and Khan are consistent or distinguishable is an open question, which I decline to answer at this time.

[36] In addition, whether the GGNSC arbitration agreement is enforceable is a question courts have answered differently; there is no legal basis to find with certainty that this agreement would be unenforceable and the petition would be legally foreclosed. See Miller v. GGNSC Atlanta, LLC, 323 Ga.App. 114, 124 (C.A.Ga. 2013)(finding the GGNSC's inclusion of NAF rendered the provision unenforceable). But see, GGNSC Montgomery, LLC v. Norris, No. 2:12cv711–CSC, 2013 WL 627114, at *4 (M.D.Ala. 2013)(finding that the inclusion of the NAF in the GGNSC arbitration agreement is not integral); Meskill v. GGNSC Stillwater Greeley LLC, 862 F.Supp.2d 966, 977 (D.Minn. 2012)(finding the GGNSC arbitration clause's inclusion of NAF was not integral and therefore required a substitute arbitrator appointed under FAA §5).

For the reasons state above, I am obliged to retain jurisdiction over the petition to compel arbitration under the <u>Colorado River</u> doctrine and will deny the respondent's motion to dismiss under Rule 12(b)(6).

An appropriate Order follows.